# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 1:09-cr-00159 |
| v. : | |
| : | (Chief Judge Kane) |
| RAHSEEM DRUMMOND, : | |
|     Defendant : | |

## MEMORANDUM

Before the Court is Defendant Rahseem Drummond's motion to suppress evidence. (Doc. No. 77.) In the motion, Defendant seeks to suppress drugs recovered during the search of an automobile in which he claims an interest, as well as statements he made during his arrest. For the reasons that follow, the motion will be denied.

## I.    BACKGROUND

On April 14, 2009, a confidential informant working with the DEA ("the Informant") rented a 2009 blueish gray Chevy Impala with Florida license plate number 757LHI. (Doc. No. 121 at 2.) DEA agents marked the car with a tracking device because they intended to have it used for an upcoming drug transaction. (Trans. 25.)

In the evening hours of May 5, 2009, the Informant loaned the marked Impala to Defendant Rahseem Drummond. (Id. 25, 27.) Defendant, accompanied by co-defendants Channel Thomas and Orson Adams, used the Impala to drive to St. Thomas, Pennsylvania, a city west of Chambersburg. (Id. 26.) Defendant, Thomas, and Adams entered a hotel which had been previously identified by the Informant as a "stash location" for marijuana and crack cocaine. (Id. 26.) DEA agents were unable to continue surveillance of Defendant Drummond once he was inside the hotel. (Id. 27.) Defendant later departed the hotel in Thomas' car, relinquishing possession of the Impala to Thomas and Adams. (Id.) It is undisputed that Defendant did not

control the Impala for more than forty-five minutes before giving the keys to Thomas. (Id.) Thomas and Adams then drove the Impala to New Jersey to obtain drugs. (Id. 29.)

On May 6, 2009, while Thomas and Adams were in New Jersey procuring additional drugs, DEA Agent Keith Kierzkowski ("Agent Kierzkowski") instructed the Informant to perform a controlled purchase of marijuana from Defendant. (Id. 28.) The Informant successfully purchased a quarter pound of marijuana from Defendant at the aforementioned hotel in St. Thomas. (Id.) The Informant brought the marijuana to Agent Kierzkowski, who was able to verify that it was contraband. (Id.)

Once Adams and Thomas had made their drug purchase in New Jersey, they contacted Defendant to advise him that the drugs were successfully obtained and that they were returning to Pennsylvania. (Id. 23.) Defendant relayed this information to the Informant, who then relayed this information to Agent Kierzkowski by text message or phone call. (Id. 19, 23, 30, 33.) Agent Kierzkowski was able to verify this tip: the GPS tracker had been indicating that the Impala was at a stable location in New Jersey, but, around the time of the call, it began movement toward Pennsylvania. (Id. 29.)

Convinced the Informant's tips were accurate and the drugs had been obtained, Agent Kierzkowski determined that it was time to arrest Defendant, as well as the occupants of the Impala. Rather than disclose the actual basis of his investigation over police airwaves, Agent Kierzkowski, working with Cumberland County and Dauphin County Drug Task Force Officers and Pennsylvania State Police ("PSP") Officers, called for Drummond's arrest on the basis of a

2

warrant issued that day for an outstanding probation violation.[1] (Id. at 15, 18; Doc. No. 110.) On the basis of Agent Kierzkowski's announcement that there was an outstanding warrant for a probation violation, a marked PSP patrol car working with Agent Kierzkowski stopped the vehicle in which Defendant was a passenger. (Trans. 18.) There is no indication that the vehicle had committed any traffic violations. (Id.) Because Agent Kierzkowski was not the officer who initiated the stop of Defendant's vehicle, he did not personally take Defendant out of the car or initiate the arrest. (Id. at 18, 20.) Agent Kierzkowski was, however, following behind the marked PSP car that initiated the arrest and was on the scene at the time. (Id. at 20.)

At this point, the facts become contested. Defendant alleges that he was punched in the ribs and groin, not informed of his rights, and interrogated despite having asked for an attorney. (Id. 36-37, 42-43.) Defendant further avers that he made no statements regarding the possibility of drugs in the Impala or on the person of the woman driving him at the time of his arrest. (Id. 44.) The facts that follow are those credited by the Court upon hearing the evidence and testimony presented at the September 3, 2009, suppression hearing.

At the time of arrest on May 6, 2009, Defendant was a passenger in a vehicle traveling south of Harrisburg on Interstate 81. (Id. 11.) After the vehicle was stopped by a marked PSP car, Defendant Drummond was removed from the car and handcuffed at gunpoint because the

---

[1] Defendant's urine had tested positive for PCP, in violation of his probation. Though Agent Kierzkowski did not have personal knowledge of the probation violation, Agent Kierzkowski testified that Detective Scott Wolf of the Drug Task Force had been in contact with Defendant's probation officer and had been informed of the outstanding arrest warrant for the probation violation. (Id. at 16-17.) Agent Kierzkowski ordered the arrest on the basis of this outstanding warrant and did not inform the other arresting officers of the drug transactions that were also at issue because he did not want to jeopardize the safety or identity of the Informant. (Id. 34.)

officers were concerned he was armed.[2] (Id. 17, 20.) Defendant Drummond was then taken to Agent Kierzkowski's unmarked Drug Task Force or DEA car, where Agent Kierzkowski advised Defendant that he was being arrested for a parole or probation violation.[3] (Id. 12, 20.) Reading from his "DEA 13A card,"[4] Agent Kierzkowski informed Defendant of his Miranda rights. (Id. 12.) Upon being informed of his rights, Defendant agreed to talk with Agent Kierzkowski, stating that the female presently accompanying him had marijuana in her possession. (Id. 13.) Agent Kierzkowski then informed Defendant that the Impala driven by Thomas and Adams had also been pulled over and asked Defendant whether he was going to let Thomas take the hit for "what was in the car." (Id. 14.) Defendant responded, "I'll take the hit for the weed, but I'm not going to take the hit for the crack. . . . [I'm] a weed guy," though Agent Kierzkowski had not stated that they had found crack cocaine in the car. (Id. 13.) In fact, the cocaine was on Thomas' person and was not discovered until she arrived at the prison barracks. (Id. 14, 18-19.) Defendant never signed a written waiver of his Miranda rights. (Id. 22.)

Defendant seeks to suppress the evidence found in the Impala as well as the statements he allegedly made to Agent Kierzkowski. He argues that the Government lacked probable cause to search the Impala, lacked probable cause to arrest him, and failed to Mirandize him. The Government contends not only that there was probable cause to search the car and to arrest

---

[2]Defendant allegedly sold guns as well as drugs, according to the Informant's tips. The Informant attempted to make a gun purchase from Defendant at the time of the controlled marijuana purchase, but Defendant told the Informant the gun was at another location. (Trans. 28.)

[3]Although the violation is alternately described as a probation violation, Agent Kierzkowski initially referred to it as a violation of Defendant's parole. (Trans. 12.)

[4]As explained by Agent Kierzkowski, a DEA 13A card is a yellow card on which the Miranda warnings are printed.

Defendant, but that Defendant does not have standing to challenge the search of a vehicle he neither owned nor controlled at the time of the search. Moreover, the Government argues that the facts indicate Defendant was properly Mirandized and informed of his rights before choosing to waive them by making statements to Agent Kierzkowski.

## II. DISCUSSION

Initially before the Court were two questions. The first question was whether Defendant, who had no ownership or possessory interest in a vehicle at the time of its stop, had a legitimate expectation of privacy in the vehicle based on his earlier control of the vehicle for less than forty-five minutes. At an evidentiary hearing held September 3, 2009, to resolve disputed issues of fact,[5] the Court determined that Defendant does not have standing to challenge the evidence found in such a vehicle.[6] For this reason, the Court turns to Defendant's remaining claim: that

---

[5] United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996) (holding that Federal Rule of Criminal Procedure 12 requires the Court to hold an evidentiary hearing on a defendant's motion if the claim is colorable and material facts are in dispute); United States v. Juarez, 454 F.3d 717, 720 (7th Cir. 2006).

[6] The undisputed facts presented relative to this matter indicate that Defendant did not own nor was he the lawful lessee of the vehicle stopped. He controlled and possessed the vehicle for not more than forty-five minutes prior to transferring possession and control of the vehicle to Channel Thomas and Orson Adams. Because Defendant was not in the car at the time of the stop, did not own the car, and did not control the car, there can be no legitimate expectation of privacy in the vehicle, and Defendant does not have standing to challenge the search of the vehicle. United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000) (finding that an individual who borrows a car and has control over it for four to six weeks can have a legitimate expectation of privacy in a car which he possess when it is searched but that there must be "clear evidence of continuing possession and control" to find an expectation of privacy in a car not owned by the defendant); Government of Virgin Islands v. Williams, 739 F.2d 936, 938 (1984) ("There is, however, no recognition of the legitimacy of a defendant's expectation of privacy where the area searched is in the control of a third party.") (citing United States v. Salvucci, 448 U.S. 83, 90 (1980)).

statements made by him at the time of arrest should be suppressed because the arrest was without probable cause and no Miranda warnings were issued.

At the hearing, Defendant conceded the validity of the Government's basis for his arrest in that an arrest warrant was issued by the probation office when Defendant tested positive for PCP in violation of his probation.[7] (Trans. 11; Doc. No. 110.) Given that Defendant was lawfully arrested pursuant to an arrest warrant, his only remaining argument is that his statements must be suppressed because he was not informed of his Miranda rights prior to being questioned and making incriminating statements to the Government. To support this argument, Defendant testified in his own defense that Agent Kierzkowski threw him onto the ground, stuck a knee into his neck, punched him in the ribs and groin, failed to read him his rights or inform him of the reasons for his arrest, and harassed him to answer for the drugs found in the Impala. (Trans. 37-38, 40-43.) Defendant further testified that, despite the fact he was never advised of his rights, he made no statements taking responsibility for any of the drugs found, asking only to speak with his attorney. (Trans. 43-44.)

After hearing the testimony of Agent Kierzkowski and Defendant, the Court finds that Defendant's account of the arrest—that he was physically assaulted, not Mirandized, not informed of the reasons of his arrest for over a day, and interrogated despite his request to speak with his lawyer—is not credible. Defendant's account of the arrest and questioning was in direct conflict with Agent Kierzkowski's account of all the events, and the Court finds Defendant's

---

[7]Although Defendant agreed that he was lawfully arrested pursuant to a valid arrest warrant, the Court notes that the totality of the circumstances, including the verified drug purchase made by the Informant and the corroboration of the Informant's other information by the GPS surveillance and recorded conversations, also indicate the Government had probable cause to arrest Defendant Drummond.

version less credible. Defendant modified his story of the alleged assault through the course of his testimony, and his demeanor was unconvincing. The Court is not persuaded that Agent Kierzkowski punched Defendant in front of several other officers, including PSP officers, for failing to respond to his un-Mirandized questioning. Moreover, the Court is not persuaded by Defendant's testimony that he was not informed of the reasons for his arrest for several days–until his attorney arrived at the county jail–, that he asked for an attorney despite all officers' failure to inform him of his rights, or that any incriminating statements were completely fabricated by Agent Kierzkowski. (Trans. 40, 42- 44.)

By contrast, the Court credits Agent Kierzkowski's testimony that Defendant Drummond was taken out of the car and handcuffed at gunpoint using "extreme caution" because of Defendant's known access to guns. The Court is persuaded that, once handcuffed, Defendant was placed into Agent Kierzkowski's unmarked DEA or Drug Task Force car and read his Miranda rights from the DEA 13A card prior to being questioned. Based on this determination of the facts, the alleged incriminating statements were made after Defendant was informed of his right to remain silent or to first speak with an attorney. Thus, the Court finds that Defendant made a knowing, intelligent, voluntary waiver of his rights.

For the above-stated reasons, and those stated by the Court at the September 3, 2009, hearing regarding Defendant's lack of standing to challenge the search of the Impala, the Court finds that Defendant was lawfully arrested, properly informed of his rights, and waived those rights. Accordingly, the motion to suppress will be denied. An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 1:09-cr-00159 |
| v. : | |
| : | (Chief Judge Kane) |
| RAHSEEM DRUMMOND, : | |
|     Defendant : | |

## **ORDER**

**AND NOW**, this 4th day of February, 2009, upon consideration of Defendant's motion to suppress (Doc. No. 77), **IT IS HEREBY ORDERED** that the motion is **DENIED.**

                                            S/ Yvette Kane
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania